# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-2942

_____

David Rolfsrud, as Trustee of the other - David and Gena Rolfsrud Mineral Trust
dated April 1, 2016; Gena Rolfsrud, as Trustee of the other - David and Gena
Rolfsrud Mineral Trust dated April 1, 2016

*Plaintiffs – Appellants*

Davis Exploration, LLC

*Plaintiff*

v.

Continental Resources, Inc.; Petro-Hunt, LLC

*Defendants - Appellees*

_____

No. 25-3111

_____

Davis Exploration, LLC

*Plaintiff - Appellant*

David Rolfsrud; Gena Rolfsrud

*Plaintiffs*

v.

Continental Resources, Inc.; Petro-Hunt, LLC

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of North Dakota - Western

_____

Submitted: May 12, 2026
Filed: July 30, 2026

_____

Before L.R. SMITH, BENTON, and STRAS, Circuit Judges.

_____

L.R. SMITH, Circuit Judge.

This consolidated appeal stems from a dispute about which of two mineral leases governs Township 152 North, Range 97 West, 5th P.M., Section 35: W/2NW/4, SE/4 (Subject Property). Appellants[1] contend that the Rolfsrud Lease, agreed to in 2019, governs. Appellees[2] contend that the County Lease, agreed to in 1948, governs. The district court[3] concluded that the County Lease governs and entered summary judgment in Appellees' favor. We affirm.

_____

[1]Appellants are David Rolfsrud and Gena Rolfsrud, as Trustees of the David and Gena Rolfsrud Mineral Trust (collectively, the "Rolfsruds") and Davis Exploration, LLC (Davis Exploration).

[2]Appellees are Continental Resources, Inc. (Continental) and Petro-Hunt, LLC (Petro-Hunt).

[3]The Honorable Daniel Mack Traynor, then United States District Court Judge for the District of North Dakota, now United States Circuit Judge for the Eighth Circuit.

## I. *Background*

The Subject Property, located in McKenzie County, North Dakota, was owned by Ellen Stole. In 1938, McKenzie County acquired the Subject Property from Ellen through foreclosure proceedings. In 1948, McKenzie County leased the Subject Property's mineral rights to Thomas Dorough in what came to be referred to as the County Lease. The County Lease permitted Dorough, the lessee, to extract minerals from specified land, including the Subject Property, in exchange for 12.5% royalty payments to McKenzie County, the lessor. The record does not contain evidence showing whether McKenzie County properly noticed Ellen of the County Lease, as required by North Dakota law.[4] The County Lease stated:

> 2. Subject to the other provisions herein contained, this lease shall remain in force for a term of ten years from this date (hereinafter called "primary term"), and as long thereafter as any of the following situations prevail (whether one of them continuously or one after another), to-wit: Oil, gas, or other hydrocarbon minerals is produced in any quantity from said land hereunder, or any operation is conducted, any payment is made, or any condition exists, which as hereinafter provided continues this lease in force.

R. Doc. 1-4, at 1.

In 1951, Hans Stole, Ellen's son, redeemed the Subject Property from McKenzie County, pursuant to N.D.C.C. § 57-28-19 (formerly § 57-2819 of the North Dakota Revised Code of 1943). That section allows former owners of property forfeited to the county (or the former owner's executor, administrator, parent, spouse, or child) to repurchase the forfeited property from the county. N.D.C.C. § 57-28-19. Hans's redemption of the property terminated any ownership interest, right, or title that McKenzie County had in the Subject Property.

---

[4]*See* N.D.C.C. § 57-28-18 (requiring counties that own foreclosed property to provide notice to the prior owner of the property or other interested parties before privately selling an interest in the property).

In 1954, Hans signed a document titled "Ratification of Oil and Gas Lease," purporting to ratify the County Lease with Dorough. R. Doc. 1-7, at 1 (all caps omitted). That document states, in relevant part, that Hans

> do(es) . . . hereby ratify, adopt and confirm said oil and gas lease insofar as it covers and pertains to any interest held or claimed by [Hans] in and to the property covered by said lease in all things with the same force and effect as if [Hans] had been named lessor and had duly executed said lease; and direct the present owner of the oil and gas lease referred to above, its successors or assigns, to pay all delay rentals which may accrue under the terms of said lease to [Hans] or his heirs, successors, administrators or assigns, as provided in the oil and gas lease above referred to, insofar as said lease pertains and covers the above described land.

*Id.* The ratification document did not purport to alter or amend any of the terms of the County Lease. There has been continuous production of oil and gas from land covered by the County Lease from at least December 1957 through August 2024.[5]

In April 2002, the Rolfsruds acquired the Subject Property and currently own it. They are the current lessors under the County Lease. Petro-Hunt is the current lessee under the County Lease.[6]

In January 2007, the Rolfsruds agreed to an oil and gas lease with Continental Resources (Continental Lease). The Continental Lease encompassed the Subject Property and additional property. In September 2009, the Rolfsruds extended the Continental Lease by three years to January 2013.

---

[5]August 2024 was the latest month of reported data as of the time of the summary judgment briefing in the district court.

[6]Petro-Hunt is Dorough's successor in interest.

In September 2019, the Rolfsruds agreed to the Rolfsrud Lease, which was an oil and gas lease for the Subject Property. The Rolfsrud Lease was recorded in October 2019 and entitles the Rolfsruds to 20% royalties as the lessors. Davis Exploration is the current lessee under the Rolfsrud Lease.

Continental is the operator under the County Lease and the Rolfsrud Lease. As the operator, Continental extracts the oil and gas from the property and distributes royalty payments to the lessor. In 2022, Continental hired a title attorney to determine whether royalties payable to the Rolfsruds were governed by the County Lease (12.5% royalties) or the Rolfsrud Lease (20% royalties). The attorney concluded that the County Lease was still in force and had priority over the Rolfsrud Lease. Accordingly, Continental issued a division order informing the Rolfsruds that it would be paying royalties at 12.5% pursuant to the County Lease. The Rolfsruds refused to sign the division order.

The parties could not successfully resolve their dispute regarding which lease governs the Subject Property and which, if either, is a top lease.[7] Continental paid royalties pursuant to the County Lease. To resolve the impasse, the Rolfsruds sued Appellees alleging five claims: breach of the Rolfsrud Lease (Count One); breach of obligation to pay royalties pursuant to N.D.C.C. § 47-16-39.1 (Count Two); a quiet title action (Count Three); a declaratory judgment action (Count Four); and an accounting action (Count Five). The Rolfsruds brought Counts Three and Four against both Appellees. The remaining three counts were only asserted against Continental. Davis Exploration filed a formal joinder in the Rolfsruds' complaint.

---

[7]"A 'top lease' is 'a lease granted by a landowner during the existence of a recorded mineral lease which is to become effective if and when the existing lease expires or is terminated.'" *Valentina Williston, LLC v. Gadeco, LLC*, 878 N.W.2d 397, 399 (N.D. 2016) (quoting *Sandvick v. LaCrosse*, 747 N.W.2d 519, 521 (N.D. 2008)).

Continental moved for summary judgment on all five claims. The district court granted Continental's motion with respect to Counts One and Five but denied the motion with respect to the remaining claims.

Continental filed a second motion for summary judgment on the remaining claims. Petro-Hunt also moved for summary judgment, arguing that the County Lease had privity over the Rolfsrud Lease and that the remaining claims therefore failed as a matter of law. The district court granted Appellees' motions for summary judgment. Relying on two North Dakota Supreme Court cases, *Ulrich v. Amerada Petroleum Corporation*, 66 N.W.2d 397 (N.D. 1954), and *Holbeck v. Hull*, 97 N.W.2d 666 (N.D. 1959), the district court concluded that the County Lease had priority over the Rolfsrud Lease. The district court noted that the Rolfsrud Lease is a top lease.

The district court quieted title in the Subject Property in favor of Petro-Hunt for its interest in the controlling County Lease and entered a judgment declaring that Petro-Hunt has a current and valid interest in the Subject Property by virtue of the County Lease. Appellants appeal the district court's judgment.

## II. *Discussion*

On appeal, Appellants argue that the district court erred when it granted summary judgment in Appellees' favor. We disagree.

"We review the district court's grant of summary judgment de novo." *Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 543 (8th Cir. 2018). We will affirm summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If there is a genuine dispute, we view the disputed facts in the light most favorable to the nonmovant. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "We may affirm

-6-

summary judgment for any reason supported by the record." *Gareis v. 3M Co.*, 9 F.4th 812, 818 (8th Cir. 2021).

## A. *Void or Voidable*

In the district court, Appellants, citing *Ulrich*, argued that the County Lease became void upon Hans's redemption of the Subject Property in 1951. In *Ulrich*, McKenzie County foreclosed on some land then agreed to an oil and gas lease covering that land. 66 N.W.2d at 399. McKenzie County did not provide notice to the prior owner of the land before agreeing to the lease. *Id.* The prior owner redeemed the land, and it was eventually conveyed to Ulrich. *Id.* Neither the prior owner nor Ulrich ratified the lease as it related to the land at issue. *Id.* The North Dakota Supreme Court explained that "[a] lease given without [notice to the prior owner] is subject to the right of the prior owner to repurchase. Such a lease is voidable by the prior owner or his family on repurchase according to the provisions of Section 57-2818 NDRC 1943." *Id.* at 404. It continued that the prior owner, upon repurchase of the land, "received the whole title which he had lost to the county." *Id.* at 405. The North Dakota Supreme Court ultimately concluded that the oil and gas lease, "by [the prior owner]'s repurchase[,] became void." *Id.* Here, similarly, Appellants argue that the County Lease, by Hans's repurchase, became void.

The district court rejected Appellants' argument. It explained that although the North Dakota Supreme Court in *Ulrich* ultimately concluded that the oil and gas lease was void, the lease became *voidable*—not void—when the prior owner repurchased the land. The district court explained that the lease in *Ulrich* only became void because no one ratified it. The district court reasoned that this interpretation of *Ulrich* clears up any potential inconsistencies in the decision regarding the void versus voidable issue. *See id.* at 404 (explaining that a lease given without notice to the prior owner "is *voidable* by the prior owner or his family on repurchase" (emphasis added)); *id.* at 405 (explaining that the lease, "by [the prior owner]'s repurchase[,] became *void*" (emphasis added)). The district court also noted that its interpretation of *Ulrich* was supported by the North Dakota Supreme

Court's *Holbeck* decision, issued five years after *Ulrich*. There, the North Dakota Supreme Court concluded that there are

> three separate effects of the failure to give notice of a private sale of an interest in tax acquired land. They are: 1, the sale is subject to the right of the former owner to repurchase; 2, *the sale is voidable, not void*; and 3, the sale is *voidable* at the instance of a party who still has a right to repurchase.

97 N.W.2d at 670 (emphases added).

In their appellate brief, Appellants reiterate their argument that the County Lease became void when Hans repurchased the Subject Property. They contend that the district court misinterpreted *Ulrich* and *Holbeck*. Appellees respond that the district court correctly analyzed those cases and that the County Lease became voidable upon Hans's redemption of the Subject Property.

During oral argument, however, Appellants switched horses with respect to the void versus voidable issue. Their counsel stated:

> With *Ulrich*, there's language . . . that says void, but I think *Holbeck*— what [the district court] did with the voidable—I think, admittedly, that that was probably right. I think [the district court] interpreted that right. I think there is an argument if you're reading *Ulrich* in isolation because of the use of the term void in the last paragraph, but when you read it in conjunction with [*Holbeck*] I think—I don't want to spend any time there . . . .

Oral argument at 8:43–9:13.

Reviewing de novo, we agree with Appellants, Appellees, and the district court that the County Lease became voidable, not void, when Hans repurchased the Subject Property. In *Ulrich*, the North Dakota Supreme Court unequivocally stated that "[a] lease given without [notice to the prior owner] is subject to the right of the

-8-

prior owner to repurchase. Such a lease is *voidable by the prior owner or his family on repurchase* according to the provisions of Section 57-2818 NDRC 1943." 66 N.W.2d at 404 (emphasis added). Here, McKenzie County agreed to the County Lease without providing proper notice to Ellen. Thus, the County Lease became voidable by Hans (Ellen's family) upon repurchase. Unlike the landowner in *Ulrich*, Hans opted to ratify the County Lease.[8] Our conclusion is also supported by *Holbeck*. 97 N.W.2d at 670 ("[T]he sale is voidable, not void . . . .").

Accordingly, the district court did not err when it concluded that the County Lease became voidable, not void, when Hans repurchased the Subject Property.

## B. *Hans's Ratification*

Next, Appellants argue that even if the County Lease was voidable rather than void, Hans lacked the authority to ratify it. Specifically, they contend that because the County Lease encompasses property that Hans did not own, he could not ratify the lease under North Dakota law. We disagree.

In support of their argument, Appellants rely in part on the Restatement (Third) of Agency's discussion of ratification.[9] *See* Restatement (Third) of Agency § 4.01 et seq. (2006). Section 4.07 states that "[a] ratification is not effective unless it encompasses the entirety of an act, contract, or other single transaction." *Id.* § 4.07. Further, comment b to section 4.01 states that "a principal must ratify a single transaction in its entirety, thereby becoming subject to its burdens as well as enjoying its benefits." *Id.* § 4.01 cmt. b. Appellants contend that because "[a]n oil and gas lease is generally indivisible by nature," *Tank v. Citation Oil & Gas Corp.*, 848

---

[8]Because Hans opted to ratify the County Lease, we need not discuss whether McKenzie County provided proper notice to Ellen pursuant to N.D.C.C. § 57-28-18 before it agreed to the County Lease. We assume without deciding that it did not.

[9]Appellants also submitted a Fed. R. Civ. P. 28(j) letter citing *Meier v. Novak*, 338 N.W.2d 631 (N.D. 1983), which cites the Restatement (Second) of Agency § 82 (1958).

N.W.2d 691, 696 (N.D. 2014), Hans's lack of ownership over all the leased land prevented him from ratifying the entire County Lease.

But this "entirety" principle of ratification aims to prevent ratifiers from opportunistically ratifying the parts of a transaction that are advantageous to him while disregarding a transaction's disadvantages. *See, e.g.*, *Kelley v. Isensee*, 233 N.W. 245, 248 (N.D. 1930) ("If the principal elects to ratify any part of the unauthorized act, he must, so far as it is entire, ratify the whole of it. He cannot avail himself of it so far as it is advantageous to him, and reject it as to the residue." (quoting 1 Mechem on Agency, §§ 409, 410)); *GDG Acquisitions LLC v. Gov't of Belize*, 849 F.3d 1299, 1310 (11th Cir. 2017) ("This does not mean that a principal must expressly state that he is ratifying the entire transaction for ratification to be effective, because a person may not, by ratifying an act, obtain its economic benefits without bearing the legal consequences that accompany the act." (citation modified)); *Cananwill, Inc. v. Fuji Express, Inc.*, 317 F. App'x 115, 118 (3d Cir. 2008) (unpublished) ("The principal must either ratify the entire transaction or repudiate it entirely, but cannot pick and choose only that which is advantageous to him." (citing Restatement (Second) of Agency § 96 (1958))); *Navrides v. Zurich Ins. Co.*, 488 P.2d 637, 641 (Cal. 1971) ("[A] principal is not allowed to ratify the unauthorized acts of an agent to the extent that they are beneficial, and disavow them to the extent that they are damaging. If a principal ratifies part of a transaction, he is deemed to ratify the whole of it."). Appellants do not cite, and we have not found, a case where this principle was used to invalidate a ratification based on the ratifier's authority to ratify certain parts of a transaction. Hans's ratification of the County Lease was consistent with this principle because he retained the benefits and burdens of the County Lease.

In the absence of authority holding otherwise, we conclude that under North Dakota law, a property owner can ratify a lease as it relates to the portion of the leased property that he or she owns. Hans ratified the entire County Lease as it related to the Subject Property, the land that he owned. Had he not ratified the lease, it would have been voided. As for the leased land that Hans did not own, no

ratification was necessary because it was not voidable upon Hans's redemption of the Subject Property. Hans's ratification did not alter the County Lease in any way other than making himself (and his heirs, successors, administrators, or assigns) the new lessor.

Accordingly, we conclude that Hans's ratification was not invalid for lack of authority.

## C. *Termination of the Lease*

Lastly, Appellants argue that even if Hans had the authority to ratify the County Lease, it has been terminated by lack of production. They assert that because of the County Lease's termination, the Rolfsrud Lease is controlling. We disagree.

The County Lease states that it "shall remain in force . . . [so long as] [o]il, gas, or other hydrocarbon minerals is produced in any quantity from said land hereunder, or any operation is conducted." R. Doc. 1-4, at 1. "Under this type of clause, production or other drilling operations anywhere on the property generally extends the lease for all of the leased property." *Tank*, 848 N.W.2d at 696. Parties to an oil and gas lease can prevent this outcome by including a "Pugh clause." *Egeland v. Cont'l Res., Inc.*, 616 N.W.2d 861, 866 (N.D. 2000). When an oil and gas lease includes a Pugh clause, production on one unit of leased land does not perpetuate the lease as to all the leased land. *Id.* "A Pugh clause cannot arise by implication and must 'clearly and explicitly direct a division of the lease into several parts.'" *Tank*, 848 N.W.2d at 697 (quoting *Egeland*, 616 N.W.2d at 867).

Here, it is undisputed that there has been continuous production on at least one of the leased units since December 1957. It is also undisputed that the County Lease does not include a Pugh clause. Therefore, we conclude that under North Dakota law, the continuous production on at least one unit of the leased property held all the leased property under the County Lease by production. It is immaterial that there has not been continuous production on the Subject Property.

-11-

Appellants contend that the terms of the non-active Continental Lease establishes that the County Lease was not a controlling lease. They argue:

> There is nothing in the Continental Lease indicating it was only effective if and when any existing lease (like the County Lease) expired or was terminated. If Continental did not consider its own 2007 lease with [the Rolfsruds] to be a top lease, only effective if and when the County Lease expired, the district court should have rejected [Appellees'] argument that the Rolfsrud Lease taken 12 years later, in 2019, was somehow a top lease subject to the County Lease.
>
> What's more, when Continental entered into its lease extension with [the Rolfsruds] in September 2009, it admitted "said lease expires in the absence of drilling operations on 1/30/2010 . . . ." (*See* App. 35; R. Doc. 1-9). It would not make any sense to include this language in the lease extension, entered in September 2009, requiring drilling operations by January 30, 2010[,] to hold the Rolfsrud Lease if there was any production of oil and gas then occurring—or previously occurring—that held the lease.

Appellants' Br. 18–19 (ellipsis in original).

Appellants' argument based on the terms of the Continental Lease is unpersuasive. As discussed above, North Dakota law is clear on how we must interpret the County Lease clause that holds the property by production. The terms of the Continental Lease—agreed to by parties who were not parties to the County Lease or Hans's ratification—did not change the terms of the County Lease. Nor do the terms of the Continental Lease change our interpretation of the County Lease.

Accordingly, we conclude that the County Lease did not terminate for lack of production. The County Lease is active and controls the Subject Property. The Rolfsrud Lease is a top lease.

### III. *Conclusion*

For these reasons, we affirm the district court's judgment.

_____